MICHAEL D. PROUGH (No. 168741)
mdp@morisonprough.law
DEAN C. BURNICK (No. 146914)
dcb@morisonprough.law
HENRY M. SU (No. 171853)
hms@morisonprough.law
MORISON & PROUGH, LLP
2540 Camino Diablo, Suite 100
Walnut Creek, CA 94597
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Plaintiff
RLI INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RLI INSURANCE COMPANY, an Illinois corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>LANGAN ENGINEERING, ENVIRONMENTAL, SURVEYING AND LANDSCAPE ARCHITECTURE, D.P.C., a New York Professional Corporation; LANGAN ENGINEERING & ENVIRONMENTAL SERVICES, INC., a New Jersey Corporation; TREADWELL & ROLLO, INC., a dissolved California Corporation,<br><br>  Defendants. | Case No.  3:19-cv-2022<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, RLI Insurance Company ("RLI") hereby asserts the following complaint against Defendants Langan Engineering, Environmental, Surveying and Landscape Architecture, D.P.C., Langan Engineering & Environmental Services, Inc. ("LEES") (the two Langan corporations are collectively referred to herein as "Langan"), and Treadwell & Rollo, Inc., also known pursuant to name change as T&R Consolidated, Inc. ("T&R"):

<u>THE PARTIES</u>

1.      RLI is a corporation organized and existing under the laws of the State of Illinois,

1    with its principal place of business in Peoria, Illinois.  RLI is a citizen of Illinois.

2         2.     Langan Engineering, Environmental, Surveying and Landscape Architecture,

3    D.P.C., is a professional corporation organized and existing under the laws of the State of New

4    York, with its principal place of business in the State of New Jersey.  It is a citizen of New York

5    and New Jersey.

6         3.     LEES is a corporation organized and existing under the laws of the State of New

7    Jersey, with its principal place of business in the State of New Jersey.  RLI is informed and

8    believes and thereon alleges that LEES is a subsidiary of Langan Engineering, Environmental,

9    Surveying and Landscape Architecture, D.P.C., which was later formed, and that some or all of

10   the principals, directors, officers and managing agents are common to both corporations.  LEES is

11   a citizen of New Jersey.

12        4.     T&R is a dissolved corporation that was organized under the laws of the State of

13   California up and through the time of its dissolution, with a final principal place of business in the

14   State of California.  Subsequent to the November 1, 2010 transaction, discussed below, and up to

15   its dissolution in or about 2016, T&R also changed its name to and was known as T&R

16   Consolidated, Inc., but remained the same corporation.  T&R is a citizen of California.

17                              JURISDICTION AND VENUE

18        5.     The Court has original jurisdiction over the present action under 28 U.S.C. § 1332,

19   because there exists complete diversity of citizenship between the parties, and the amount in

20   controversy exceeds $75,000.  Venue is proper within this District pursuant to 28 U.S.C.

21   §§1391(b)(2) & 1391(c)(2).  One or more of the corporate defendants is subject to personal

22   jurisdiction in this District, and additionally, a substantial part of the events or omissions giving

23   rise to the claim occurred, or a substantial part of the property that is the subject of the action is

24   situated, in this District.

25                                    FACTS

26        6.     In or about 2004-2009, T&R entered into a series of contracts relating to

27   geotechnical engineering services related to the construction of a 58-story high-rise including

28   luxury condominium units located at 301 Mission Street in San Francisco, generally known as the

Millennium Tower.  Among other services, it has been alleged by numerous parties in various lawsuits that T&R prepared and issued reports regarding the suitability and characteristics of the soils underlying the Millennium Tower project, including projections of the anticipated pace and magnitude of settlement of the building into the soils.  RLI alleges on information and belief that on or about 2008, allegedly prior even to the completion of Millennium Tower, T&R is alleged to have learned that the amount and/or rate of settlement at the building were greater and/or happening faster than it had anticipated and/or projected.

7.     On or about July 16, 2008, T&R prepared and served a letter to its then professional liability/errors & omissions (E&O) liability insurance company, Terra, providing a formal notice of circumstances that could give rise to a potential Claim under the Policy (the "2008 Notice of Circumstances.")

8.     A true and correct copy of the 2008 Notice of Circumstances letter, authenticated and submitted by Langan to the court with a motion filed in the underlying Millennium Tower Litigation, is attached hereto as Exhibit A.

9.     T&R disclosed to Terra, in its 2008 Notice of Circumstances, that there was a risk that the building would experience more long-term settlement than estimated, and that this may result in certain distress or damage to the building.  T&R advised Terra that although it had not yet received a demand letter or direct allegation of its negligence, there was sufficient concern to put Terra on notice.

10.     RLI is informed and believes and thereon alleges that in 2009-10, LEES and T&R negotiated the terms of an asset purchase agreement whereby LEES would procure certain assets of T&R in exchange for cash consideration, and many of the principals and staff of T&R would join LEES.  In the course of the negotiation of the transaction, LEES performed due diligence in investigating T&R and its potential liabilities.  RLI is informed and believes and thereon alleges that in the course of that investigation and/or investigation, LEES learned of the facts concerning the claims of accelerated, excessive and/or differential settlement of Millennium Tower and the 2008 Notice of Circumstances.

11.     On or about November 1, 2010, LEES and T&R executed the asset purchase

COMPLAINT

MORISON &
PROUGH, LLP

1    agreement.  One section of that Agreement provided that that there were no known pending or

2    threatened actions or suits except those identified on an attached schedule.  RLI is informed and

3    believes and thereon alleges that the attached schedule identified the Millennium Tower

4    settlement issue as one such potential claim.

5        12.    RLI is informed and believes and thereon alleges that one contract T&R had

6    undertaken relating to the Millennium Tower project prior to November 1, 2010 was a contract

7    with the building's owner to report on certain work being performed at an adjacent property, the

8    Transbay Joint Powers Authority's (TJPA's) Transbay Transit Center Project.  RLI is informed

9    and believes and thereon alleges that one consideration of the developers, builders and/or design

10   professionals at the TJPA Transbay Transit Center construction project, was to seek not to affect

11   the settlement or degree of settlement at Millennium Tower.  Pursuant to this work, T&R would

12   have access to information regarding continuing sinking and/or alleged differential settlement at

13   Millennium Tower.  RLI is informed and believes and thereon alleges that on or about October of

14   2010, LEES assumed the obligations of T&R under that contract and the owner of Millennium

15   Tower consented to that assignment of contract.  Thereafter, from 2010 through or about 2014,

16   and/or beyond, LEES's ongoing work also would have included the review and analysis of

17   information regarding any continuing settlement of Millennium Tower.

18       13.    On or about 2012-13, LEES entered into a contract relating to the development of

19   another adjacent property, 350 Mission Street.  RLI is informed and believes and thereon alleges

20   that one consideration of the developers, builders and/or design professionals at the 350 Mission

21   Street construction project, was to seek not to affect the settlement or degree of settlement at

22   Millennium Tower.  Pursuant to its work on the 350 Mission Street project, LEES would have

23   access to information regarding any continuing settlement of Millennium Tower.

24       14.    On or about March 21, 2014, Langan submitted an application for insurance to

25   RLI, dated January 22, 2014, relating to its potential procurement of a $5 million excess

26   professional liability policy, to apply above a $5 million primary policy already in place with

27   Markel.  The result of adding the excess layer of coverage would be to double Langan's liability

28   insurance limits from $5 million to $10 million.  The policy period was to be coterminous with

- 4 -

the 2014-15 Primary Policy, from April 1, 2014 to April 1, 2015.

15.     A true and correct copy of the 2014-15 Application is attached hereto as Exhibit B.

16.     The insurance for which Langan applied via the 2014-15 Application,[1] and each subsequent Application alleged herein, was requested to extend coverage on behalf of Langan and other specified named insureds.  For each year, a single insurance application was prepared and submitted on behalf of and for the benefit of all such named insureds.  Thus, at all times from at least January 22, 2014 forward, Langan was acting as the authorized or ostensible agent of and under the express or implied authority of all the named insureds for which it was procuring insurance coverage.  Each such named insured for whom coverage was sought ratified the application and adopted its representations in accepting insurance coverage under the policies that resulted, each of which also attached and incorporated its respective application.

17.     Langan answered "No" to question no. 28(b) on the 2014-15 Application: "Is the Applicant (after proper inquiry of each Director, Officer or Partner of the Applicant or other prospective insured party) aware of any circumstance, incident, situation or accident during the past ten years which may result in a claim being made against the Applicant, its Predecessors in business, or any of the present or past Partners, Officers or Directors of the Applicant."

18.     Langan's answer to question no. 28(b) on the 2014-15 Application was false.

19.     Langan answered "No" to question no. 28(d) on the 2014-15 Application: "Has the Applicant or any other party proposed for insurance knowledge of injury to people or damage to property during the [last] five years on or at projects where the Applicant has rendered professional services?"

20.     Langan's answer to question no. 28(d) on the 2014-15 Application was false.

21.     Langan and RLI did not enter into a policy as of April 1, 2014.  However, months later, Langan approached RLI, on or about August 12, 2014, seeking to add the $5 million in excess coverage during the current remaining term of the 2014-15 Policy Period to April 1, 2015.  On or about August 25, 2014, Langan conveyed to RLI its order to bind coverage.  In conjunction

---

[1]     The redactions of each Application and Policy attached as exhibits hereto relate to financial information. Langan should have unredacted copies of each such document in its business records.  RLI can provide unredacted copies to Langan upon request.

COMPLAINT

MORISON &
PROUGH, LLP

1    with Langan's Order, it attached a letter from Langan dated August 25, 2014.

2         22.    A true and correct copy of Langan's August 25, 2014 Letter is attached as Exhibit

3    C.

4         23.    Langan represented and warranted to RLI: "Please be advised that as of today,

5    August 25, 2014, we are not aware of any claim or circumstances that may give rise to a claim in

6    light of increasing our Professional Liability limits from $5M to $10M."

7         24.    Langan's August 25, 2014 Letter was false.

8         25.    In addition to the affirmative misrepresentations identified herein, Langan

9    concealed and failed to disclose the fact of Millennium Tower's settlement, T&R's alleged

10   implication in causing or contributing to it, T&R's 2008 Notice of Circumstances, T&R's and

11   Langan's continuing work and potential involvement in claims relating to the Millennium Tower.

12        26.    In reliance on Langan's material misrepresentations on the 2014-15 Application

13   and in the August 25, 2014 Letter, and in reliance upon Langan's concealments, RLI issued

14   Excess Professional Liability Policy no. RDP0016587, with a policy period of August 25, 2014 to

15   April 1, 2015 (the "2014-15 Policy").  August 25, 2014 to April 1, 2015 is the "2014-15 Policy

16   Period."

17        27.    Via endorsement to the 2014-15 Policy, Langan agreed that RLI "has relied upon

18   the statements and representations contained in the [2014 Application] . . . as being accurate and

19   complete.  It is further understood and agreed that the Named Insured and the Insureds warrant

20   and represent to [RLI] that the statements and representations made in such application were

21   accurate on the date such representations and statements were so given and in connection

22   therewith the Insureds hereby reaffirm each and every statement made in the application to RLI

23   Insurance Company as accurate as of 1/22/2014 as if it was made to the Insurer on such date.  All

24   such statements and representations shall be deemed to be material to the risk assumed by the

25   Insurer, are the basis of this Policy and are to be considered as incorporated into this Policy."

26        28.    On or about December 8, 2014, Langan applied for insurance with RLI on a

27   renewal basis, for the following April 1, 2015 – April 1, 2016 Policy Period, submitting an

28   application that had been signed by Langan on December 5, 2014 (the "2015-16 Application").

29.     A true and correct copy of the 2015-16 Application is attached as Exhibit D.

30.     Langan answered "No" to question no. 28(b) on the 2015-16 Application: "Is the Applicant (after proper inquiry of each Director, Officer or Partner of the Applicant or other prospective insured party) aware of any circumstance, incident, situation or accident during the past ten years which may result in a claim being made against the Applicant, its Predecessors in business, or any of the present or past Partners, Officers or Directors of the Applicant."

31.     Langan's answer to question no. 28(b) on the 2015-16 Application was false.

32.     Langan answered "No" to question no. 28(d) on the 2015-16 Application: "Has the Applicant or any other party proposed for insurance knowledge of injury to people or damage to property during the [last] five years on or at projects where the Applicant has rendered professional services?"

33.     Langan's answer to question no. 28(d) on the 2015-16 Application was false.

34.     Above the signature line of the 2015-16 Application, Langan agreed: "If the information in this application or any attachment materially changes between the date this application is signed and the effective date of this policy, you will promptly notify us, and we may modify or withdraw and outstanding quotation or agreement to bind coverage."

35.     On April 17, 2015, Langan sent correspondence to its primary insurer, Markel, regarding a "circumstance" that it asked to be handled under the 2014-15 Primary Policy.  The basis for the request that Markel accept it under the 2014-15 Primary Policy was that, according to Langan, a principal in Langan's San Francisco office became aware of the potential claim in March of 2015—during the 2014-15 Policy Period.  The "circumstance" Langan reported to Markel related to T&R's allegedly faulty work at Millennium Tower and the resulting allegations of excessive or differential settlement and resulting structural damage.  RLI is informed and believes that Markel agreed to accept Langan's notice and to handle it under the 2014-15 Primary Policy, in part on the basis that Langan personnel had also separately reported the circumstance to Markel personnel during March of 2015.  Langan's notification to Markel of the "circumstance" of Millennium Tower in March of 2015 shall be referred to as the "2014-15 Markel Notice of Circumstance."

36.     A true and correct copy of the April 17, 2015 e-mail reflecting and memorializing the 2014-15 Markel Notice of Circumstance is attached hereto as Exhibit E.

37.     In addition to the affirmative misrepresentations identified herein, Langan concealed and failed to disclose to RLI during the 2015-16 application process or prior to the effective date of the 2015-16 Policy: the fact of Millennium Tower's settlement, T&R's alleged implication in causing or contributing to it, T&R's 2008 Notice of Circumstances, T&R's and LEES' continuing work and potential involvement in claims relating to the Millennium Tower, and the 2014-15 Markel Notice of Circumstance.

38.     In addition to the affirmative misrepresentations identified herein, Langan failed to correct for the prior misrepresentations and concealments from the 2014-15 Policy application process, including its false August 25, 2014 Letter.

39.     In reliance on Langan's material misrepresentations and concealments, RLI issued Excess Professional Liability Policy no. RDP0019163, with a policy period of April 1, 2015 to April 1, 2016 (the "2015-16 Policy").

40.     Via endorsement to the 2015-16 Policy, Langan agreed that RLI "has relied upon the statements and representations contained in the [2015 Application] (including materials submitted thereto, and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this Policy is a renewal or succeeds in time) as being accurate and complete.  It is further understood and agreed that the Named Insured and the Insureds warrant and represent to [RLI] that the statements and representations made in such application were accurate on the date such representations and statements were so given and in connection therewith the Insureds hereby reaffirm each and every statement made in the application to RLI Insurance Company as accurate as of 12/5/2014 as if it was made to the Insurer on such date.  All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this Policy and are to be considered as incorporated into this Policy."

41.     On or about January 5, 2016, Langan applied for insurance with RLI on a renewal basis, for the following April 1, 2016 – April 1, 2017 Policy Period, submitting an application

1    that had been signed by Langan on November 20, 2015 (the "2016-17 Application").

2         42.    A true and correct copy of the 2016-17 Application is attached as Exhibit F.

3         43.    Langan answered "No" to question no. 28(b) on the 2016-17 Application: "Is the

4    Applicant (after proper inquiry of each Director, Officer or Partner of the Applicant or other

5    prospective insured party) aware of any circumstance, incident, situation or accident during the

6    past ten years which may result in a claim being made against the Applicant, its Predecessors in

7    business, or any of the present or past Partners, Officers or Directors of the Applicant."

8         44.    Langan's answer to question no. 28(b) on the 2016-17 Application was false.

9         45.    Langan answered "No" to question no. 28(d) on the 2016-17 Application: "Has the

10   Applicant or any other party proposed for insurance knowledge of injury to people or damage to

11   property during the [last] five years on or at projects where the Applicant has rendered

12   professional services?"

13        46.    Langan's answer to question no. 28(d) on the 2016-17 Application was false.

14        47.    On or about March 21, 2016, RLI asked Langan to submit an updated application

15   for the 2016-17 renewal.  On March 21, 2016, Langan signed and submitted an updated

16   application (the "Updated 2016-17 Application").  The Updated 2016-17 Application answered

17   "no" on question 28(b).  That was still false.  The Updated 2016-17 Application checked neither

18   box for question 28(d).  Langan called no attention to that change (if it was intended), nor did

19   Langan correct the inaccurate "no" answer previously provided.

20        48.    A true and correct copy of the Updated 2016-17 Application is attached as Exhibit

21   G.

22        49.    In addition to the affirmative misrepresentations identified herein, Langan

23   concealed and failed to disclose the fact of Millennium Tower's settlement, T&R's alleged

24   implication in causing or contributing to it, T&R's 2008 Notice of Circumstances, T&R's and

25   LEES' continuing work and potential involvement in claims relating to the Millennium Tower,

26   and the 2014-15 Markel Notice of Circumstance.

27        50.    In addition to the affirmative misrepresentations identified herein, Langan failed to

28   correct for the prior misrepresentations and concealments from the 2014-15 Policy application

process and the 2015-16 Policy application process, including the false August 25, 2014 Letter.

51.     In reliance on Langan's material misrepresentations and concealments, RLI issued Excess Professional Liability Policy no. RDP0023900, with a policy period of April 1, 2016 to April 1, 2017 (the "2016-17 Policy").

52.     Via endorsement to the 2016-17 Policy, Langan agreed that RLI "has relied upon the statements and representations contained in the [2016 Application] (including materials submitted thereto, and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this Policy is a renewal or succeeds in time) as being accurate and complete.  It is further understood and agreed that the Named Insured and the Insureds warrant and represent to [RLI] that the statements and representations made in such application were accurate on the date such representations and statements were so given and in connection therewith the Insureds hereby reaffirm each and every statement made in the application to RLI Insurance Company as accurate as of 3/21/2016 as if it was made to the Insurer on such date.  All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this Policy and are to be considered as incorporated into this Policy."

53.     On or about January 6, 2017, Langan applied for insurance with RLI on a renewal basis, for the following April 1, 2017 – April 1, 2018 Policy Period, submitting an application that had been signed by Langan on January 5, 2017 (the "2017-18 Application").

54.     A true and correct copy of the 2017-18 Application is attached as Exhibit H.

55.     Langan checked neither box on question no. 28(b) on the 2017 Application: "Is the Applicant (after proper inquiry of each Director, Officer or Partner of the Applicant or other prospective insured party) aware of any circumstance, incident, situation or accident during the past ten years which may result in a claim being made against the Applicant, its Predecessors in business, or any of the present or past Partners, Officers or Directors of the Applicant."

56.     Langan checked neither box on question no. 28(d) on the 2017 Application: "Has the Applicant or any other party proposed for insurance knowledge of injury to people or damage to property during the [last] five years on or at projects where the Applicant has rendered

professional services?"

57.     Langan concealed and failed to disclose the fact of Millennium Tower's settlement, T&R's alleged implication in causing or contributing to it, T&R's 2008 Notice of Circumstances, T&R's and LEES' continuing work and potential involvement in claims relating to the Millennium Tower, and the 2014-15 Markel Notice of Circumstance.

58.     Langan failed to correct for the prior misrepresentations and concealments from the 2014-15 Policy application process, the 2015-16 Policy application process, and the 2016-17 application process, including the false August 25, 2014 Letter.

59.     In reliance on Langan's material misrepresentations and concealments, RLI issued Excess Professional Liability Policy no. RDP0028008, with a policy period of April 1, 2017 to April 1, 2018 (the "2017-18 Policy").

60.     Via endorsement to the 2017-18 Policy, Langan agreed that RLI "has relied upon the statements and representations contained in the [2016 Application] (including materials submitted thereto, and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this Policy is a renewal or succeeds in time) as being accurate and complete.  It is further understood and agreed that the Named Insured and the Insureds warrant and represent to [RLI] that the statements and representations made in such application were accurate on the date such representations and statements were so given and in connection therewith the Insureds hereby reaffirm each and every statement made in the application to RLI Insurance Company as accurate as of 1/5/2017 as if it was made to the Insurer on such date.  All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this Policy and are to be considered as incorporated into this Policy."

FIRST CLAIM FOR RELIEF
(RESCISSION OF 2014-15 POLICY)

61.     RLI reiterates and incorporates Paragraphs 1-60, above, as though fully set forth herein.

62.     A true and correct copy of the 2014-15 Policy is attached as Exhibit I.

63.     In the process of applying for the 2014-15 Policy, Langan affirmatively misrepresented and concealed material facts concerning T&R's and Langan's knowledge of and potential exposure to losses related to the Millennium Tower settlement.

64.     Langan's "No" answer to question 28(b) of the 2014-15 Application was false.

65.     Langan's "No" answer to question 28(d) of the 2014-15 Application was false.

66.     Langan's August 25, 2014 Letter to RLI was false.

67.     Langan concealed the fact that it and T&R were aware of claims or potential claims that existed against one or both of them relating to the Millennium Tower settlement.

68.     Langan concealed the fact that T&R had served the 2008 Notice of Circumstance to Terra Insurance, identifying Millennium Tower as a potential claim.

69.     The facts misrepresented and concealed by Langan were each and all material to the risk to be underwritten by RLI under the 2014-15 Policy.

70.     RLI is entitled to rescission and hereby rescinds the 2014-15 Policy, in its entirety, void *ab initio*.  RLI offers to return the premium paid by Langan, which reflects the benefits received under the contract, in the amount reflected on the Declarations Page of the Policy (redacted from the Complaint exhibit but known to Langan).  Langan may consent to rescission and accept this return premium by so indicating in its response to this Pleading.

<u>SECOND CLAIM FOR RELIEF</u>
(RESCISSION OF 2015-16 POLICY)

71.     RLI reiterates and incorporates Paragraphs 1-70, above, as though fully set forth herein.

72.     A true and correct copy of the 2015-16 Policy is attached as Exhibit J.

73.     In the process of applying for the 2015-16 Policy, Langan affirmatively misrepresented and concealed material facts concerning T&R's and Langan's knowledge of and potential exposure to losses related to the Millennium Tower settlement.

74.     Langan's "No" answer to question 28(b) of the 2015-16 Application was false.

75.     Langan's "No" answer to question 28(d) of the 2015-16 Application was false.

76.     Langan concealed the fact that it and T&R were aware of claims or potential

claims that existed against one or both of them relating to the Millennium Tower settlement.

77.     Langan concealed the fact that T&R had served the 2008 Notice of Circumstance to Terra Insurance, identifying Millennium Tower as a potential claim.

78.     Langan concealed the fact that it had served the 2014-15 Markel Notice of Circumstance, an event that occurred between the date Langan submitted its application and the inception date of the 2015-16 Policy.

79.     The facts misrepresented and concealed by Langan were each and all material to the risk to be underwritten by RLI under the 2015-16 Policy.

80.     RLI is entitled to rescission and hereby rescinds the 2015-16 Policy, in its entirety, void *ab initio*.  RLI offers to return the premium paid by Langan, which reflects the benefits received under the contract, in the amount reflected on the Declarations Page of the Policy (redacted from the Complaint exhibit but known to Langan).  Langan may consent to rescission and accept this return premium by so indicating in its response to this Pleading.

THIRD CLAIM FOR RELIEF
(RESCISSION OF 2016-17 POLICY)

81.     RLI reiterates and incorporates Paragraphs 1-80, above, as though fully set forth herein.

82.     A true and correct copy of the 2016-17 Policy is attached as Exhibit K.

83.     In the process of applying for the 2016-17 Policy, Langan affirmatively misrepresented and concealed material facts concerning T&R's and Langan's knowledge of and potential exposure to losses related to the Millennium Tower settlement.

84.     Langan's "No" answer to question 28(b) of the 2016-17 Application, both in its original 11/20/15 Application and again in its 3/21/16 Updated 2016-17 Application, was false.

85.     Langan's "No" answer to question 28(d) of the 2016-17 Application, signed on 11/20/15, was false.  Langan's silent failure to answer question 28(d) on its 3/21/16 Updated 2016-17 Application did not correct for its earlier affirmative misrepresentation.

86.     Langan concealed the fact that it and T&R were aware of claims or potential claims that existed against one or both of them relating to the Millennium Tower settlement.

87.     Langan concealed the fact that T&R had served the 2008 Notice of Circumstance to Terra Insurance, identifying Millennium Tower as a potential claim.

88.     Langan concealed the fact that it had served the 2014-15 Markel Notice of Circumstance.

89.     The facts misrepresented and concealed by Langan were each and all material to the risk to be underwritten by RLI under the 2016-17 Policy.

90.     RLI is entitled to rescission and hereby rescinds the 2016-17 Policy, in its entirety, void *ab initio*.  RLI offers to return the premium paid by Langan, which reflects the benefits received under the contract, in the amount reflected on the Declarations Page of the Policy (redacted from the Complaint exhibit but known to Langan).  Langan may consent to rescission and accept this return premium by so indicating in its response to this Pleading.

FOURTH CLAIM FOR RELIEF
(RESCISSION OF 2017-18 POLICY)

91.     RLI reiterates and incorporates Paragraphs 1-90, above, as though fully set forth herein.

92.     A true and correct copy of the 2017-18 Policy is attached as Exhibit L.

93.     In the process of applying for the 2017-18 Policy, Langan affirmatively misrepresented and concealed material facts concerning T&R's and Langan's knowledge of and potential exposure to losses related to the Millennium Tower settlement.

94.     Langan declined to answer question 28(b) of the 2017 Application. Yet Langan did not correct, and thereafter expressly adopted, its prior false "No" answers.

95.     Langan's declined to answer question 28(d) of the 2017 Application.  Yet Langan did not correct, and thereafter expressly adopted, its prior false "No" answers.

96.     Langan concealed the fact that it and T&R were aware of potential claims or claims that existed against one or both of them relating to the Millennium Tower settlement.

97.     Langan concealed the fact that T&R had served the 2008 Notice of Circumstance to Terra Insurance, identifying Millennium Tower as a potential claim.

98.     Langan concealed the fact that it had served the 2014-15 Markel Notice of

1  Circumstance.

2       99.    The facts misrepresented and concealed by Langan were each and all material to

3  the risk to be underwritten by RLI under the 2017-18 Policy.

4       100.    RLI is entitled to rescission and hereby rescinds the 2017-18 Policy, in its entirety,

5  void *ab initio*.  RLI offers to return the premium paid by Langan, which reflects the benefits

6  received under the contract, in the amount reflected on the Declarations Page of the Policy

7  (redacted from the Complaint exhibit but known to Langan).  Langan may consent to rescission

8  and accept this return premium by so indicating in its response to this Pleading.

9  FIFTH CLAIM FOR RELIEF<br>(DECEIT -- FRAUD)

10

11       101.    RLI reiterates and incorporates Paragraphs 1-60, above, as though fully set forth

12  herein.

13       102.    By virtue of each and all of the misrepresentations and concealments specifically

14  identified above, in paragraph nos. 17, 19, 21, 22, 23, 25, 30, 32, 37, 38, 43, 45, 47, 49, 50, 55,

15  56, 57, & 58, Langan affirmatively misrepresented and/or purposefully concealed material facts

16  in the course of applying for insurance from RLI.

17       103.    Acting as and on behalf of prospective insureds applying for insurance with RLI

18  under each and all of the Policies, Langan owed a duty to RLI to answer the questions on the

19  application truthfully, to only make truthful representations and to disclose all known facts

20  material to the risk that RLI was being asked to undertake.

21       104.    Langan intentionally misrepresented, concealed or suppressed the true facts

22  regarding Millennium Tower, T&R's and Langan's involvement and potential exposure to claims

23  relating to Millennium Tower, and T&R's and Langan's awareness of and notices of

24  circumstances and potential claims relating to Millennium Tower, as pleaded herein, in order to

25  induce reliance by RLI and specifically, to induce RLI to issue a $5 million policy of insurance in

26  each of four consecutive policy years.  RLI justifiably relied on Langan's misrepresentations and

27  concealments by issuing such policies.

28       105.    RLI has been damaged, and it continues to be damaged, in that it has incurred

expense and has been called upon to expend further sums by virtue of its issuance of the fraudulently induced policies, in an amount to be proven at trial.

106.    RLI is informed and believes and thereon alleges that Langan's deceit was willful and knowing, in that it was not and could not have been genuinely unaware of the true facts that it misrepresented and concealed from RLI, but rather undertook to double its available insurance limits at RLI's expense, with full knowledge and awareness of the Millennium Tower exposure that was materializing and fast approaching, so as to support the imposition of exemplary damages in the event this deceit is proven at trial.

SIXTH CLAIM FOR RELIEF
(DECEIT – NEGLIGENT MISREPRESENTATION)

107.    RLI reiterates and incorporates Paragraphs 1-60, above, as though fully set forth herein.

108.    By virtue of each and all of the misrepresentations specifically identified above, in paragraph nos. 17, 19, 21, 22, 23, 30, 32, 37, 43, 45, 47, 55, & 56, Langan affirmatively misrepresented material facts to RLI.

109.    Acting as and on behalf of prospective insureds applying for insurance with RLI under each and all of the Policies, Langan owed a duty to RLI to answer the questions on the application truthfully, to only make truthful representations and to disclose all known facts material to the risk that RLI was being asked to undertake.

110.    Langan's misrepresentations were made without reasonable grounds for believing them to be true, and with the intent to induce reliance by RLI and specifically, to induce RLI to issue a $5 million policy of insurance in each of four consecutive policy years.  RLI justifiably relied by issuing such policies.

111.    RLI has been damaged, and it continues to be damaged, in that it has incurred costs and may be called upon to expend further sums by virtue of its issuance of the fraudulently induced policies, in an amount to be proven at trial.

/ / /

/ / /

SEVENTH CLAIM FOR RELIEF
*Pleaded in The Alternative to Rescission*
(DECLARATORY RELIEF – CLAIMS MADE AND REPORTED)

112.     RLI reiterates and incorporates Paragraphs 1-60, above, as though fully set forth herein.

113.     This claim for relief is pled in the alternative to, and without waiver of, the rescission counts set forth above.  Each of the four RLI excess policies has been rescinded.  The alternative claims are alleged in the event Langan does not accept the rescission, asserts defenses to it, or it otherwise transpires that a prompt judicial determination as to the efficacy of the rescission is not adjudicated.

114.     In March of 2015, Langan received and reported to Markel a notice of circumstance regarding potential liability relating to the settlement of Millennium Tower, under Alterra Excess & Surplus Lines Insurance Company Policy no. MAX7PL0001189 (the "2014-15 Primary Policy.")  Alterra was one underwriting subsidiary within the Markel family of insurance companies.  An e-mail memorializing Langan's prior report to Markel was sent on April 17, 2015.  Langan and Markel have agreed that notice of circumstance was effectively reported in March of 2015, under the 2014-15 Primary Policy.

115.     In 2016, Langan contends that it first received written demands and the first of a series of lawsuits and cross-claims seeking to impose liability on T&R and LEES because of alleged professional negligence relating to the Millennium Tower settlement.  RLI is informed and believes and thereon alleges that a number of lawsuits all relating to Millennium Tower and alleging damages, *inter alia*, resulting from its excessive or differential settlement, are presently pending in a consolidated proceeding, in San Francisco Superior Court, under the lead case captioned:  *Lehman, et al., v. Transbay Joint Powers Authority, et al.*, no. CGC-16-553758.  Other cases consolidated include, at least, nos. CGC-17-557830; CGC-17-556292; CGC-17-558649; CGC-17-559210; CGC-17-560322.  All consolidated and related cases are collectively referred to herein as the "Millennium Tower Litigation."

116.     The 2014-15 Primary Policy's Section XII – Notice of Claim or Circumstance, Paragraph B.3. provides that "If, during the Policy Period any director, officer, principal, partner,

insurance manager or any member of the risk management or legal department of the Insured

Organization first becomes aware of any Circumstance and gives written notice to the

Underwriters," then "any subsequent Claim made against the Insured arising out of such

Circumstance which is the subject of the written notice will be deemed to have been made at the

time the written notice complying with the above requirements was first given to the

Underwriters."   Therefore, by operation of the plain terms of that contract, and the fact of the

2014-15 Markel Notice of Circumstances, the series of Claims related to the Millennium Tower

Litigation are and have been deemed to be "claims made" during the 2014-15 Policy Period.[2]

117.    RLI's excess 2014-15 Policy requires that notice to RLI "shall be given as

provided in the Primary Policy at the respective address shown in Item 9. of the Declarations.

Any notice to the insurer of the Underlying Insurance shall not constitute notice to [RLI] unless

also given to [RLI] as provided above."

118.    Langan did not report the notice of circumstance to RLI in accordance with the

2014-15 Excess Policy.

119.    Langan first provided notice of any potential liability for Millennium Tower to

RLI in August of 2016, some 16 months after the 2014-15 Policy Period had expired.

120.    The Claims related to the Millennium Tower Litigation were not Claims first made

against Langan and/or T&R during the 2016-17 Policy Period.  Rather, under the plain terms of

the 2014-15 Policy and pursuant to Langan's notice of circumstance reported to Markel (but not

RLI) in March of 2015, the Claims related to the Millennium Tower Litigation were Claims first

made during the 2014-15 Policy Period (if not before).

121.    Any Claim made against an Insured during the 2014-15 Policy must be reported to

RLI "in no event later than sixty (60) days after the expiration of the Policy Period. . .."

---

[2]     To be clear, this is not intended as an admission that no "Claim" was in fact made against Langan or T&R *prior to* the 2014-15 Policy Period.  This is the case-originating complaint.  RLI has not had the benefit of discovery into the files of T&R, Langan and all the other parties involved in Millennium Tower and the adjoining properties since 2008.  It is certainly within the realm of probability that somewhere before August 25, 2014, T&R or Langan would have received, from somebody, "A written demand for monetary damages, services or non-monetary relief" or a "civil, administrative or regulatory investigation," for example, constituting a "Claim."  That would affect both the question of Claim timing for claims-made coverage purposes, and also the grounds for rescission identified above. All rights are reserved, including the right to seek to amend the pleading upon further discovery.

122.    By virtue of the foregoing, RLI contends that the Claims Langan tendered to RLI during the 2016-17 Policy Period were not Claims "first made against the Insured during the Policy Period" of 2016-17.  They were Claims first made during the 2014-15 Policy Period (if not before); yet they were reported to RLI 16 months after that policy period had expired.  Langan's non-compliance with the reporting requirements precludes coverage under the 2014-15 Policy.

123.    RLI is informed and believes and thereon alleges that Langan disputes these contentions, and instead contends that the Millennium Tower Litigation Claims should be handled by RLI under the terms of its 2014-15 Policy.

124.    By virtue of the foregoing, there presents a justiciable controversy between RLI and Langan regarding the availability of coverage for the Millennium Tower Litigation Claims under one or both of the 2014-15 Policy or the 2016-17 Policy.

125.    RLI seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that the Millennium Tower Litigation Claims are not covered under its contracts of insurance with Langan, by virtue of the claims-made and reporting provisions.

<u>EIGHTH CLAIM FOR RELIEF</u>
*Pleaded in The Alternative to Rescission*
(DECLARATORY RELIEF – RELATED CLAIMS AND NOTICE OF CIRCUMSTANCE)

126.    RLI reiterates and incorporates Paragraphs 1-60 and 112-125, above, as though fully set forth herein.

127.    This claim for relief is pled in the alternative to, and without waiver of, the rescission counts set forth above.  Each of the four RLI excess policies has been rescinded.  The alternative claims are alleged in the event Langan does not accept the rescission, asserts defenses to it, or it otherwise transpires that a prompt judicial determination as to the efficacy of the rescission is not adjudicated.

128.    The Millennium Tower Litigation entails numerous lawsuits with numerous parties, complaints and cross-complaints, filed between 2016 and the present, all arising from and related to allegations, *inter alia*, that Millennium Tower is settling excessively into the soil and/or settling differentially and thus tilting, at least in part because of allegedly deficient geotechnical engineering services provided by T&R and/or LEES.  [To be clear, there are many other

1  defendants including developers, marketers, public agencies, general contractors, subcontractors,

2  architects and engineers, and many other alleged causes of loss also being alleged in the lawsuits.]

3      129.    Under the terms of the 2014-15 Primary Policy, terms to which RLI's excess

4  2014-15 Policy follow form, "Multiple Claims arising from the same or a series of related or

5  repeated acts, errors, omissions or Pollution Conditions or from any continuing acts, errors,

6  omissions or Pollution Conditions shall be considered a single Claim for the purposes of this

7  Policy, irrespective of the number of Claimants or Insureds involved in the Claim.  [¶]  All such

8  Claims shall be deemed to have been made at the time of the first such Claim."

9      130.    All the Millennium Tower Litigation Claims against Langan and T&R thus

10  constitute a single Claim, deemed made at the time of the first Claim that was made.

11      131.    The 2014-15 Primary Policy's Section XII – Notice of Claim or Circumstance, to

12  which the RLI excess 2014-15 Policy follows form, provides that if an Insured provides a Notice

13  of Circumstance within the 2014-15 policy period, then "any subsequent Claim made against the

14  Insured arising out of such Circumstance which is the subject of the written notice will be deemed

15  to have been made at the time when the written notice complying with the above requirements

16  was first given to the Underwriters."

17      132.    Under the 2014-15 Primary Policy, Langan reported a notice of circumstance to

18  Markel, identifying the Millennium Tower project, the estimated and actual pace and magnitude

19  of settlement, differential settlement, and claims of resulting property damage.  All Claims of the

20  Millennium Tower Litigation against the Insureds "arise out of" those circumstances.  Thus,

21  assuming there were no "Claims" made against T&R or Langan prior to the 2014-15 Policy

22  Period, all would be deemed made during the 2014-15 Policy Period.

23      133.    By virtue of the foregoing, RLI contends that all Claims related to the Millennium

24  Tower Litigation are considered a single Claim, deemed to have been made at the time of the first

25  such Claim.  RLI further contends that under Section XII.B. of the 2014-15 Policy, all Claims

26  related to the Millennium Tower Litigation "arise out of" the "Circumstance" that Langan

27  reported to Markel during the 2014-15 Policy Period.  RLI is informed and believes and thereon

28  alleges that Langan disputes these contentions, and rather contends that the Millennium Tower

MORISON &
PROUGH, LLP

Litigation involves unrelated Claims that may implicate more than one Policy Period.

134.     By virtue of the foregoing, there now exists a justiciable controversy between RLI and Langan regarding the number and timing of the multiple Claims relating to the Millennium Tower litigation.

135.     RLI seeks a judicial declaration, under 28 U.S.C. §§ 2201 et seq., that the Millennium Tower Litigation Claims are related claims all deemed to have been made in the 2014-15 Policy Period or that they arise out of the Circumstance that Langan first reported to Markel during the 2014-15 Policy Period.

<u>NINTH CLAIM FOR RELIEF</u>
*Pleaded in The Alternative to Rescission*
(DECLARATORY RELIEF – EXCESS COVERAGE)

136.     RLI reiterates and incorporates Paragraphs 1-60 and 112-135, above, as though fully set forth herein.

137.     This claim for relief is pled in the alternative to, and without waiver of, the rescission counts set forth above.  Each of the four RLI excess policies has been rescinded.  The alternative claims are alleged in the event Langan does not accept the rescission, asserts defenses to it, or it otherwise transpires that a prompt judicial determination as to the efficacy of the rescission is not adjudicated.

138.     Each RLI excess policy provides, by its express terms, that "Subject to and except as otherwise stated in this Policy, the Insurer shall prove the Insureds with insurance in accordance with the limitations, conditions, provisions and other terms of the Primary Policy. . . . In no event shall this Policy grant broader coverage than would be provided by any of the Underlying Insurance.  Liability shall attach to the Insurer only after the insurers of the Underlying Insurance or the Insureds pay in legal currency as loss covered thereunder the full amount of the Underlying Limit."

139.     RLI's excess coverage does not and would not apply, if at all, in the absence of exhaustion of the Underlying Limit by the actual payment of loss covered thereunder, which has not occurred.  Accordingly, RLI can owe no present contractual duty with respect to the Millennium Tower Litigation or any other claims under the terms of the RLI excess policies.

MORISON &
PROUGH, LLP

140.    The primary policies, to which RLI's excess coverage follow form, contain various conditions, exclusions and definitions that are applicable or potentially applicable to some of the claims asserted in the Millennium Tower Litigation, including:

A.    The insuring agreement of Coverage A, Architects and Engineers Professional Liability, extends only to certain "Professional Services"; defined as "those services performed for others by or on behalf of the Insured Organization in the practice of architecture, engineering, land surveying, landscape architecture, interior design, project or construction management or environmental consulting, or as set forth in endorsements to this Policy."

B.    Exclusion VI.B, Insured versus Insured, bars coverage to the extent of any claims asserted by or against Langan with regard to any other person or entity that is an insured under the policies;

C.    Exclusion VI.E, Assumption of Contractual Liability of Others, bars coverage for liability arising out of or resulting from the liability of others assumed by the Insured under any contract or agreement either oral or written, including any hold harmless or indemnity agreements;

D.    Exclusion VI.F, Express Warranties, Representations, Guarantees and Promises, bars coverage for liability for or arising out of or resulting from (1) breach of any express warranty or representation except for an agreement to perform within a reasonable standard of care consistent with applicable industry standards; or (2) breach of guarantee . . . .; and

E.    Exclusion VI.G, Faulty Workmanship, bars coverage for damages arising out of the cost to repair or replace any faulty construction workmanship performed in whole or in part by any Insured on any construction, erection, fabrication, installation, assembly, manufacture or remediation, including any materials, parts, labor or equipment furnished in connection with such repair or replacement.

COMPLAINT

141.    Langan has demanded coverage for, *inter alia*, the Millennium Tower Litigation, notwithstanding the coverage terms, definitions and limitations contained within the RLI excess liability insurance policies.  RLI disputes that the policies as written would apply, in whole or in part, on the basis of the facts presently extant.  There exists a justiciable controversy, in the event the policies are not adjudicated to have been rescinded, regarding the coverage afforded under the parties' contracts of insurance and their applicability to all or some of the claims and cross-claims alleged in the Millennium Tower Litigation.

142.    RLI seeks the entry of a declaratory judgment regarding the applicability of the coverage under its insurance contracts with Langan with respect to the claims alleged and any judgment or settlement that may be entered with respect to the Millennium Tower Litigation.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, RLI Insurance Company respectfully prays for relief as follows:

1.    On its First Claim for Relief, for an adjudication that the 2014-15 Policy is rescinded;

2.    On its Second Claim for Relief, for an adjudication that the 2015-16 Policy is rescinded;

3.    On its Third Claim for Relief, for an adjudication that the 2016-17 Policy is rescinded;

4.    On its Fourth Claim for Relief, for an adjudication that the 2017-18 Policy is rescinded;

5.    On its Fifth Claim for Relief, compensatory damages in an amount to be proven at trial; and, upon a finding of malice, fraud or oppression, imposition of exemplary damages;

6.    On its Sixth Claim for Relief, compensatory damages in an amount to be proven at trial;

7.    On its Seventh Claim for Relief, a declaratory judgment that no coverage is owed for the Millennium Tower Litigation because of the insuring agreement requirements and the reporting provisions of these claims-made-and-reported policies;

8.    On Its Eighth Claim for Relief, a declaratory judgment that the Claims related to

the Millennium Tower Litigation constitute a single Claim made at the time of the first such Claim, and/or that the Claims related to the Millennium Tower Litigation arise out of the circumstances that Langan reported to Markel during the 2014-15 Policy Period.

9.     On its Ninth Claim for Relief, a declaratory judgment that RLI owes no present coverage obligation under the terms of its insurance contracts with Langan, and for the determination of the existence and scope of any obligation with regard to a judgment or settlement that may hereafter be entered with respect to the Millennium Tower Litigation.

10.     For prejudgment interest and for costs of suit, to the extent permitted by law; and

11.     For such other and further relief as the Court may deem just and proper.

Dated:  April 15, 2019                              MORISON & PROUGH, LLP


                                        By: /s/ *Michael D. Prough*
                                            Michael D. Prough

                                        Attorneys for Plaintiff
                                        RLI INSURANCE COMPANY


DEMAND FOR JURY TRIAL

Plaintiff RLI Insurance Company, by and through its counsel, hereby demands a trial by jury of all issues so triable in the above-entitled matter.

Dated:  April 15, 2019                              MORISON & PROUGH, LLP


                                        By: /s/ *Michael D. Prough*
                                            Michael D. Prough

                                        Attorneys for Plaintiff
                                        RLI INSURANCE COMPANY