UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RLI INSUANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>LANGAN ENGINEERING, ENVIRONMENTAL, SURVEYING AND LANDSCAPE ARCHITECTURE, D.P.C., et al.,<br><br>    Defendants. | Case No. 19-cv-02022-SI<br><br>**ORDER ON PLAINTIFF'S MOTION TO STRIKE**<br><br>Re: Dkt. No. 32 |

Before the Court is plaintiff's motion to strike the counterclaim asserted by defendants Langan Engineering, Environmental, Surveying and Landscape Architecture, D.P.C. and Langan Engineering and Environmental Services, Inc. (collectively "Langan"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the December 6, 2019 hearing.

**BACKGROUND**

The parties' dispute stems from four excess insurance policies – the 2014, 2015, 2016, and 2017 policies, respectively – that Langan took out from plaintiff RLI Insurance Company ("RLI"). Dkt. No. 33 at 2 (Motion to Strike). RLI's amended complaint seeks judicial rescission of each policy (claims 1, 2, 3, and 4), damages for misrepresentation/concealment (5, 6), a declaratory judgment (7, 8, 9), and finally a claim for Recoupment of Insurer Payments (10). Amended Compl. ¶¶ 61-146. RLI argues Langan did not disclose potential liability from Langan's 2010 purchase of various T&R Consolidated ("T&R") assets and concurrent acquisition of many of the principals and staff of T&R. Amended Compl. ¶¶ 10-11. T&R was a geotechnical engineering firm that worked

1    on the Millennium Tower project in San Francisco, including preparation of reports relating to the
2    projected settling of the building. Amended Compl. ¶ 6. RLI alleges that after construction began
3    on Millennium Tower, but prior to its completion, the Tower had already settled beyond the amount
4    projected by T&R. *Id*. RLI alleges that during the course of due diligence prior to purchasing T&R,
5    Langan learned that T&R notified its insurance carrier in 2008 of a potential claim regarding
6    accelerated, excessive and/or differential settlement of Millennium Tower. Amended Compl. ¶ 10.

In August 2016, Langan was named in various lawsuits under a theory of successor liability for T&R's work on Millennium Tower. Amended Compl. ¶ 115. These cases were ultimately consolidated under lead case *Laura Lehman v. Transbay Joint Powers Authority, et al*., San Francisco Superior Court, Case No. CGC-16-553758 ("Millennium Tower Actions"). *Id*. RLI alleges August 2016 is the first time Langan informed RLI of a potential claim. Amended Compl. ¶ 119. Underlying third party claimants asserting liability claims against Langan have made settlement demands in the Millennium Tower Actions and Langan has requested RLI commit to funding the settlements (beyond the primary carrier's contributions). Amended Compl. ¶ 144. RLI has agreed to fund the settlements under a reservation of rights, including the right to recoup payments from Langan in the event RLI is found not to owe coverage. *Id*.

On April 15, 2019, RLI filed the instant action. Dkt. No. 1. On September 27, 2019, plaintiff RLI filed an amended complaint. Dkt. No. 30. On October 11, 2019, defendant Langan answered the amended complaint and included a counterclaim; the counterclaim includes two causes of action seeking (1) damages for breach of the covenant of good faith and fair dealing and (2) declaratory relief. Dkt. No. 31. RLI brings the instant motion to strike Langan's first cause of action in the counterclaim, arguing it violates California's Anti-SLAPP statute. Dkt No. 33.

**LEGAL STANDARD**

The California Legislature passed California Civil Procedure Code section 425.16 to address "a disturbing increase" in Strategic Lawsuits Against Public Participation ("SLAPPs"), or suits brought "primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). Section 425.16 permits

defendants (or counterclaim defendants) to bring a "special motion to strike" if a cause of action against them arises "from any act . . . in furtherance of the person's right of petition or free speech . . . in connection with a public issue[.]" *Id*. § 425.16(b)(1), (h). A special motion to strike under section 425.16 is commonly referred to as an anti-SLAPP motion.

In order to prevail on an anti-SLAPP motion, the movant must first make a prima facie showing, through the pleadings themselves and supporting affidavits, that the statement or conduct underlying the legal claims against it qualifies for protection under the anti-SLAPP statute. *Id*. § 425.16(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). Specifically, the movant must show "that the challenged cause of action is one '***arising from***' protected activity. (§ 425.16, subd. (b)(1).)." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 76, (2002) (emphasis added). The burden then shifts to the non-moving party to demonstrate a probability of prevailing on the challenged claims. Cal. Civ. Proc. Code § 425.16(b)(1); *Vess*, 317 F.3d at 1110.

Although it is a state statute, a party may bring an anti-SLAPP motion to strike state law claims in federal court. *Vess*, 317 F.3d at 1109 (citing *United States ex. rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999) (holding that there is no direct conflict between the Federal Rules and §§ 425.16(b) and (c), and that adopting California procedural rules serves the purposes of the Erie doctrine)).

**DISCUSSION**

California's anti-SLAPP statute establishes four categories of protected speech or conduct. Cal. Civ. Proc. Code § 425.16(e), including "any written or oral statement or writing made before a legislative, executive, or judicial proceeding[.]" *Id*. RLI contends Langan "has sued RLI for filing its Complaint" (Dkt. No. 33 at 2) and argues RLI's amended complaint is protected speech as a "claim for relief filed in federal district court indisputably is a statement or writing made before a … judicial proceeding (425.16(e)(1))." Dkt. No. 33 at 12 (citations and internal quotations omitted). But "to suggest that all cross-actions arise from the causes of action in response to which they are pled would contravene the statutory scheme governing cross-complaints." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 77 (2002). Further, "a cross-complaint often arises out of the same

transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges…without necessarily *arising* from that earlier lawsuit itself." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (emphasis added) (internal citations and quotations omitted).

Langan's counterclaim arises from the underlying insurance contracts and the dispute over whether RLI has acted in bad faith – an issue that has been percolating, as alleged in the counterclaim, for several years and certainly long before the filing of RLI's complaint. RLI seeks to rescind the contracts and Langan seeks to enforce them – different sides of the same coin and independently viable lawsuits. Langan's counterclaim alleges in part that Langan provided timely notice of the Millennium Tower Litigation in August 2016 and "RLI did nothing in response" for nearly three years. Counterclaim ¶ 18 (Dkt. No. 31). The counterclaim alleges further that: (1) RLI sat on its hands to see if Langan could successfully defend against the successor liability claim; (2) RLI did so to continue collecting premiums from Langan without committing to coverage; and (3) after it appeared likely that Langan would lose a summary adjudication motion on the successor liability issue, RLI filed the instant action seeking to rescind the four policies. Counterclaim ¶ 28.

When unpacking the "arising from" analysis, the California Supreme Court case *City of Cotati* is particularly helpful. 29 Cal. 4th 69 (2002). There, owners of mobilehome parks sued a city in federal court challenging the validity of a mobilehome park rent stabilization program. *Id*. at 73. Subsequently, the city sued the owners in state court for a declaratory judgment upholding the rent stabilization program. *Id*. The owners moved in state court to strike the city's complaint under the anti-SLAPP statute. *Id*. The California Supreme Court held the city's subsequent state court action against the owners did not "arise from" the owners' protected activity and therefore, was not subject to a special motion to strike. *Id*. at 80. While the owners' "federal court action *informed* [the city] of the existence of an actual controversy justifying declaratory relief," the owners' action, "itself, [did not] constitute[] that controversy." *Id*. at 79. Both actions arose from the same controversy: the constitutionality of the city's rent stabilization ordinance. *Id*. at 80.

Like the owners' federal action in *City of Cotati*, RLI's complaint informed Langan of an actual controversy crystalizing a dispute that had been ongoing for years. The substance of Langan's counterclaim is based on the underlying controversy regarding the insurance contracts and is not

4

based on RLI's complaint.  Thus, Langan's counterclaim is not subject to a special motion to strike under the anti-SLAPP statute.

RLI has failed to carry its burden under the first step where it must show that Langan's counterclaim arises from RLI's protected activity. The Court, therefore, need not address the second step of the anti-SLAPP analysis involving Langan's burden to show a probability of prevailing on the merits of its counterclaim

## CONCLUSION

RLI's special motion to strike is denied.[1]

**IT IS SO ORDERED**.

Dated: December 5, 2019

_____
SUSAN ILLSTON
United States District Judge

---

[1] The Court denies the parties' evidentiary objections as moot.

5